```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
--------------------------------------------------------
                                            :
UNITED STATES OF AMERICA,                   :    CASE NO. 1:05CR499
                                            :
         Plaintiff,                         :
                                            :
vs.                                         :    OPINION AND ORDER
                                            :    [Resolving Doc. No. 17]
SERGIO GONZALEZ,                            :
                                            :
         Defendant.                         :
                                            :
--------------------------------------------------------
```

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Before the Court is Defendant Sergio Gonzalez's Motion to Suppress. [Doc. 17]. The Government opposes Gonzalez's motion. [Doc. 19]. On November 29, 2005, the Court conducted a hearing on Gonzalez's motion. For the reasons that follow, the Court DENIES the defendant's motion.

I.  Background

At approximately 1:00 p.m. on September 28, 2005, Officer Matthew Naegele of the Willoughby Hills Police Department stopped a Dodge Neon traveling east on I-90 in Lake County. Before the stop, Officer Naegele was observing eastbound traffic for violations and his cruiser was visible to other drivers. Naegele noticed that the Neon moved slower than the flow of traffic, about 10 - 15 miles per hour less than the posted 60 mile per hour speed limit. He claims the Neon's driver appeared to be avoiding eye contact with his vehicle. As the Neon moved past Naegele's position, he claims it moved in and out of its lane. Naegele left his stopped position and followed

Case No. 1:05CR499
Gwin, J.

the Neon. He says it continued to weave in and out of its lane. Naegele then stopped the Neon, allegedly because of the weaving.

Naegele checked the Neon's registration and determined that it was a rental car from Boston, Massachusetts. The officer then approached Neon's passenger-side door to address the Neon's driver, who remained in the car. Naegele identified the violation for the driver, and requested her driver's license and rental agreement. The driver gave Naegele the paperwork. The rental agreement said the car was rented to Sarah Gonzalez, the defendant's wife. The rental agreement further stated only Ms. Gonzalez could drive the car, and the car could only be operated in Massachusetts. The driver identified herself as Yesenia Martinez. The defendant was the only other occupant of the Neon.

The defendant told the officer they were returning to Boston from his aunt's funeral in Chicago. The defendant also said his aunt died of a "migraine." Officer Naegele asked Ms. Martinez to step out of the vehicle, he took her to his vehicle, issued her a warning citation for weaving, and took her out of his vehicle and told her she was free to go. After she had moved approximately ten feet back towards the Neon, Naegele asked Martinez if he could talk to her, and she consented. Naegele asked her about the circumstances of her trip. Martinez's account of the trip did not match the defendant's. Naegele asked Martinez if he could search the car, and she twice told him he could search it. The defendant separately agreed that Naegele could search the car.

When Naegele opened the trunk, he saw large bags of chili peppers, a common masking agent for drugs. He also saw a Boost mobile telephone in the car, a variety of phone commonly used by smugglers. Naegele also observed a lose screw on the read passenger-side door, which suggested someone had tampered with the door. Naegele shook the door and heard something loose within

Case No. 1:05CR499
Gwin, J.

the door. The officer used his duty knife to peel back the window compartment, and the door came apart. Inside the door were four kilogram-sized packages wrapped in cellophane with residual white powder. The packages were covered in grease, another narcotics masking agent. Later tests determined the packages contained cocaine.

Naegele and another officer handcuffed Gonzalez and Martinez and placed them in separate patrol cars. The officers read Gonzalez and Martinez their Miranda rights. Although the defendant initially denied any knowledge of the packages, he said otherwise upon arriving at the police station. There, the defendant stated that an unknown person asked him to drive from Boston to Chicago and back. The defendant also said he and Martinez drove to Chicago, and met another person who gave them the keys to the Neon and told them about the packages in the car. The defendant understood he was transporting some kind of narcotic. Defendant Gonzalez completed a signed Miranda waiver form at the station. [Tr. 25]. A later search of the car's underside revealed another package of cocaine hidden in the rear bumper. The defendant denied knowing about the fifth package.

## II. Legal Standard

*A. Traffic Stop*

The Fourth Amendment guarantees that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. Amend. IV. "[S]topping an automobile and detaining its occupants constitute a 'seizure' within the meaning of th[e] [Fourth] Amendment[], even though the purpose of the stop is limited and the resulting detention quite brief." *Delaware v. Prouse*, 440 U.S. 648, 653 (1979). An automobile stop is reasonable where the police have probable cause to believe that a traffic violation has occurred. *See id.* at 659, 661, 663. If police officers have probable cause to believe

-3-

Case No. 1:05CR499
Gwin, J.

that a vehicle has committed a traffic offense, the officers are entitled to stop the car even if they have some other motivation for doing so. *See United States v. Whren*, 517 U.S. 806, 813 (1996) (rejecting argument that the "constitutional reasonableness of traffic stops depends on the actual motivations of the individual officers involved"); *United States v. Ferguson*, 8 F.3d 385, 391 (6th Cir. 1993) ("We focus on . . . whether this particular officer in fact had probable cause to believe that a traffic offense had occurred, regardless of whether this was the only basis or merely one basis for the stop.").

Whether probable cause exists "depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck v. Alford*, 125 S. Ct. 588, 593 (2004) (citing *Maryland v. Pringle*, 540 U.S. 366, 371 (2003)).  The Court must determine "whether the officer's action was justified at its inception," and "whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *United States v. Freeman*, 209 F.3d 464, 466 (6th Cir. 2000) (citing *Terry v. Ohio*, 392 U.S. 1, 19-20 (1968)).

The Sixth Circuit has held that even where the police issue no traffic citation, they are permitted to ask "off topic" questions if they have probable cause that a traffic violation occurred. *See United States v. Burton*, 334 F.3d 514, 519 (6th Cir. 2003).

B.  *Consent To Search*

Consent to search is generally invalid if an illegal search or seizure occurred before the consent was given. *U.S. v. Haynes*, 301 F.3d 669, 680-84 (6th Cir. 2003).  However, under some circumstances, a voluntary consent to search may remove the prior taint. *Id.* at 682.  "Consent must be proved by clear and positive testimony and must be unequivocally, specifically, and intelligently given, uncontaminated by any duress and coercion." *United States v. Tillman*, 963 F.2d 137, 143

Case No. 1:05CR499
Gwin, J.

(6th Cir. 1992). "Whether a consent to search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of the circumstances." *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973). The Court considers (1) the time between the illegal seizure and the consent, (2) intervening circumstances, and (3) the flagrancy of the police misconduct. *See Brown v. Illinois*, 422 U.S. 590 (1975).

### III.  Analysis

Officer Naegele's stop of the Neon was questionable. From his vantage point on I-90, Officer Naegele claims he observed the Neon weaving across the lanes of traffic. From a seated position in a median area, it is difficult to believe he was positioned to observe more than seconds of the Neon's travel. When Officer Naegele began to follow the Neon, he says the weaving continued. Although he had a video camera available that could establish this weaving, he failed to activate it. He then issue only a warning citation. Naegele's stop was suspect and the warning supports this finding.

However, even if the initial stop were illegal, the defendant and Ms. Martinez consented to Officer Naegele's search of the vehicle. Officer Naegele advised Martinez that she was free to leave. Although the stop had been questionable, her consent obviated the problems. Sufficient time passed, no threats were made, and circumstances do not indicate that the consent was involuntary. When he then asked if he could search the vehicle, she consented twice. The defendant also consented to the search. Neither the defendant nor Martinez were under arrest or in custody at the time of their consent. Based on the conflicting stories offered by the defendant and Martinez, as well as the car's rental records, there is no indication that Naegele acted in bad faith in asking to search the car. Nor was Naegele's conduct flagrant in making the initial stop.

Case No. 1:05CR499
Gwin, J.

## IV. Conclusion

For the aforementioned reasons, the Court DENIES Defendant Gonzalez's motion to suppress.

IT IS SO ORDERED.


Dated: November 30, 2005          s/ *James S. Gwin*
                                                     JAMES S. GWIN
                                                     UNITED STATES DISTRICT JUDGE